IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 1:09:CV-01458-RWR |
| FIRST CHOICE ARMOR & EQUIPMENT, INC., EDWARD DOVNER, KAREN HERMAN, EXOTIC CARS LLC, EXCEL AVIATION, LLC, AND MRSA JETS, LLC. | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## MOTION TO DISMISS

### A. INTRODUCTION

Defendants, First Choice Armor & Equipment, Inc. ("First Choice"), Edward Dovner, Karen Herman, Exotic Cars LLC, Excel Aviation, LLC, and MRSA Jets, LLC, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6) and 9(b), respectfully request this Court to dismiss the government's complaint in the above-referenced case. According to the government's complaint, First Choice supposedly engaged in a purported scheme to sell allegedly defective body armor to federal, state, local, and tribal law enforcement agencies and, after learning that the government was investigating First Choice, the company, Mr. Dovner, its founder, and Ms. Herman, Mr. Dovner's spouse, fraudulently withdrew funds from First Choice, and then utilized such funds to acquire two automobiles and an airplane. Based upon this alleged misconduct, the government asserts that First Choice and Mr. Dovner knowingly made false statements and false records regarding the sale of the body armor in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1) and (a)(1)(B) (Counts 1-2); First Choice breached its express contract with the United States, and caused the government to pay the company by mistake (Counts 4-5); and First Choice, Mr. Dovner, and Ms. Herman were unjustly enriched and fraudulently conveyed funds in violation of 28 U.S.C. §§

3304(a)(1)(A)-(B), (b)(1)(A), and (b)(1)(B) of the Federal Debt Collection Procedures Act ("FDCPA") (Counts 5-8).

Unfortunately, despite investigating First Choice for over three years, the government's complaint fails to pass muster. Regarding the FCA counts (Counts 1-2), the government proceeds upon an erroneous legal premise. Specifically, the gravamen of an FCA claim is an objective falsehood, *i.e.*, a false statement submitted to the government to induce payment. Yet, the government's complaint is devoid of any such statements. Rather, it is replete with allegations regarding First Choice's purported scheme to sell defective body armor to the government. The FCA, however, does not penalize underlying fraudulent activity, such as the supposed scheme the government outlines in its complaint. Rather, the FCA applies only to false statements but, in this case, the government's complaint fails to contain any such utterances. Instead, the government attempts to convert an alleged fraudulent scheme into an FCA violation *i.e.*, pound a square peg into a round hole. Thus, based upon this erroneous legal theory, the government's FCA counts fail to state a claim, and therefore, this Court, pursuant to Fed. R. Civ. P. 12(b)(6) must dismiss these counts.

Besides relying upon an erroneous legal theory, the government also disregards fundamental law underpinning the FCA. As this Court is well aware, materiality is an essential element of any FCA violation. Yet, the government appears to believe otherwise. Count 1 is absolutely devoid of any allegation regarding the materiality of any alleged false statements. In addition, Count 2, the § 3729(a)(1)(B) alleged violation, also contains a fatal defect. § 3729(a)(1)(B) applies only to FCA claims that are pending on or after June 7, 2008. In this case, based upon the complaint's explicit allegations, on August 25, 2005, First Choice terminated the sale of its body armor to all federal, state, local, and tribal authorities. Thus, First Choice did not have any claims pending as of June 7, 2008, and consequently, as a matter of law, § 3729(a)(1)(B) does not apply to First Choice.

Motion to Dismiss
Page 2

Count 3, the breach of contract claim, fails for a different reason. This Court is one of limited jurisdiction. Its "power to adjudicate does not extend beyond the boundaries Congress has set by statute." *United States v. Unified Industries, Inc.*, 929 F.Supp. 947, 949 (E.D. Va. 1996). With respect to contractual disputes involving the government, Congress enacted the Contract Disputes Act ('CDA"), 41 U.S.C. §§ 601-613, to serve as the mechanism to resolve any such disputes. The CDA was intended to resolve these issues via administrative remedies, and therefore, Congress excluded the parties from dealing with their disputes in federal district courts. In other words, the CDA constitutes the exclusive scheme concerning contractual issues involving the government and, unless allegations underlying a breach of contract claim are intertwined with fraud allegations, a federal district court lacks subject matter jurisdiction over such contractual disputes. Such is the precise scenario in this case. According to the government, First Choice breached its contract to the government because it contravened the warranty accompanying the body armor, *i.e.*, it provided supposed defective body armor to the government, failed to comply with the warranty or to correct the purported defects in the body armor, and did not identify the allegedly defective material in the body armor. These allegations are completely distinct from the alleged false statements underlying the FCA claims and, in fact, stand alone. Indeed, the allegation that First Choice breached its warranty is irrelevant to whether First Choice or Mr. Dovner made false statements or false records in order to induce the government to pay for the body armor. Thus, because the breach of contract claim is not inextricably intertwined with the FCA claims, this Court lacks subject matter jurisdiction over Count 3 and, pursuant to Fed. R. Civ. P. 12(b)(1) must dismiss this Count.

This Court must also dismiss counts 4-5, the counts alleging payment by mistake and unjust enrichment. In this Circuit, the law is patent: if the government alleges the existence of an express contract, it may not proceed on alternative equitable theories such as payment by mistake and unjust enrichment. Once again, the government has ignored the law. It has

specifically alleged the existence of an express contract between the government and First Choice (Count 3), and then proceeded to seek alternative relief via the avenues of payment by mistake and unjust enrichment. The existence of the express contract, however, precludes the government from proceeding with its two remaining equitable theories, and therefore, this Court must dismiss Counts 4-5.

The fraudulent conveyance counts, 6-8, fare no better. These three counts hinge on the government's allegation that the defendants owed a debt to the government, and that debt became due and owing at the time the defendants supposedly sold defective body army to the government. Yet, the premise that the defendants owed a debt to the government based upon its alleged sale of supposedly defective vests is flat wrong. Since a warranty accompanied the sale of vests, the defendants incurred no debt when it sold the product to the government. Rather, if a debt arose at all, the defendants would have incurred it, if—and when—they breached the warranty. Of course, the Complaint fails to allege that the defendants acted in such a manner, and therefore, they incurred no debt to the government. Without one, there can be no fraudulent conveyance claims.

Dismissal of the fraudulent conveyance and FCA counts is also warranted because the government fails to plead these fraud counts with the requisite particularity that Fed. R. Civ. P. 9(b) requires. In this case, with respect to the fraud counts, Fed. R. Civ. P. 9(b) requires the government to identify, "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Communications, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). Regarding the FCA counts, the government does not identify any false statements or any alleged falsities contained in such statements. In addition, the government also fails to specify the declarant or recipient of such statements or where they were uttered and when they were made. In simple terms, because of the lack of particularity surrounding the FCA counts, the defendants must guess as to the

circumstances regarding any alleged false statements, and consequently, this Court has no choice but to dismiss these counts. They fail 9(b)'s particularity mandate.

The same analysis applies to the fraudulent conveyance counts. Pleadings made upon "information and belief" fail to satisfy 9(b)'s particularity requirement. Yet, in this case, a vast majority of the allegations regarding the alleged fraudulent conveyances are based upon "information and belief." This fatal error is further exacerbated by the fact that, beginning in 2006, the government initiated its investigation into First Choice and the other defendants, and therefore, had over three years to obtain the facts necessary to satisfy 9(b). Yet, with respect to the fraudulent conveyance and FCA counts, the government has made little—or no—attempt to fulfill 9(b)'s particularity requirement. Thus, as with the FCA counts, this Court should dismiss the fraudulent conveyance counts. The government has utterly failed to satisfy 9(b)'s mandate, especially considering the amount of time the government expended in gathering evidence against the defendants.

## B. ANALYSIS

### 1. THE FCA CLAIMS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Fed. R. Civ. P. 12(b)(6) permits dismissal of a complaint when the complaint fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has held that the facts alleged in a complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the Court indicated that a complaint must "state a claim for relief that is plausible on its face" *Id.*, at 570. While a plaintiff is not required to furnish detailed factual allegations to withstand a 12(b)(6) motion, he must provide "more than labels or conclusions" or "a formulaic recitation of the elements of a cause of action [.]" *Id.*, at 555. Moreover, this Court "need not accept inferences unsupported by the facts in the complaint, nor must [it] accepts plaintiff's legal conclusions." *Martin v. Arc of the District of Columbia*, 541 F.Supp.

2d 77, 81 (D.D.C. 2008); *see also Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Regarding the FCA counts, this Court, even after accepting the government's allegations contained in the complaint as true, will arrive at the inevitable conclusion that these counts fail to state a claim for relief upon which relief may be granted.    In its complaint, the government repeatedly identifies its theory of the case:

> [t]hese defective Zylon vests were sold to the United States and state, local, and tribal authorities by First Choice.  The United States alleges that First Choice and Dovner knew, within the meaning of the FCA, that the Zylon bullet-proof vests First Choice sold were defective and degraded more quickly that First Choice and Dovner represented. . . . As a result of First Choice and Dovner's conduct and representations, the United States paid for defective Zylon body armor.

> [t]he claims for payment for each and every First Choice Zylon vest sold to the United States under the GSA schedule by First Choice were false claims in that the Zylon in these vests was defective and degraded substantially and quickly and, thus, did not meet their five-year warranty. By the actions set forth in Paragraphs 25-48 of this Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and did not comply with their five-year warranty.  Notwithstanding this knowledge, First Choice and Dovner misrepresented the suitability of Zylon in ballistic applications.  For these reasons, First Choice and Dovner knowingly presented or caused false claims to be presented to the federal government and knowingly made or caused to be made false statements to get false claims paid.

> [t]he claims for payment for each and every First Choice Zylon vest presented to the United States by state, local, and tribal law enforcement agencies pursuant to the BPVGPA were false claims in that the Zylon in those vests were defective and degraded substantially and quickly and, thus, did not meet their five-year warranty.  By the actions set forth in Paragraphs 25-48 of the Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and would not meet their five-year warranty.  For these reasons, First Choice and Dovner knowingly caused false claims to be presented to the federal government.

> [t]he claims for payment for each and every First Choice Zylon vest sold to the United States under federal contracts by First Choice were false claims in  that the Zylon in those vests was defective and degraded substantially and quickly and, thus, did not meet their five-year warranty.  By the actions set forth in Paragraphs 25-48 of the Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and did not meet their five-year warranty.  For these reasons, First Choice and Dovner knowingly caused false claims to be presented to the federal government.

*See* Complaint, ¶¶ 2, 17, 21, 23.  In simple terms, the government alleges that First Choice and Mr. Dovner's alleged statements were false because the body armor was supposedly defective and theoretically failed to comply with the product's five-year warranty.[1]

Yet, allegedly defective body armor and failing to satisfy a warranty does not equate, in any terms, to a false statement.  For the government to establish an FCA violation, it initially must establish an "objective falsehood." *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 376 (4th Cir. 2008). "The FCA . . . 'attaches liability, not to underlying fraudulent activity, but to the claim for payment.'" *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002)(quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)).  Reduced to its essence, "[t]he FCA is not a catchall anti-fraud provision; it only goes after claims that are false, not claims that are submitted while fraud is afoot." *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 71 (D.D.C. 2007)(citation omitted); *see also United States v. Science Applications International Corp.*, 555 F.Supp.2d 40, 49 (D.D.C. 2008).

In this case, the government's claim that the body armor was defective and did not comply with the five-year warranty is simply not a false claim or record within the FCA. Indeed, this Circuit as already held that allegations regarding nonconforming goods fail to state a FCA violation:

> "the bare assertion that defendants delivered goods that did not conform to contractual specifications is not enough to state a violation of the FCA.

*Totten*, 286 F.3d at 551.  Such is the precise scenario in this case.  The government's alleged false statement or records are simply claims of nonconforming goods and, as such, they do not

---

[1]     The government utterly misconstrues the warranty.  It is not a guarantee of future performance, but a repair or replace warranty. *See* Warranty, attached hereto as Exhibit A; *see also Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547 (9th Cir. 1994)(warranty of future performance must be explicit and unambiguous); *Ontario Hydro v. Zallea Systems, Inc.*, 569 F. Supp. 1261 (D. De. 1983)(warranty of future performance required to provide explicitly a guarantee of future performance).

state a FCA violation.[2]  Consequently, because allegedly fraudulent activity does not amount to false claims or records, this Court has no choice but to dismiss Counts 1-2.[3]

Count 1 also contains another fatal defect.  As this Court has recently held, materiality is an essential element of all FCA violations.  *See United States v. Science Applications International Corp.*, 2009 U.S. Dist. LEXIS 84021 at * 41-42 (D.D.C. September 15, 2009). Yet, despite this controlling precedent, the government omits any mention of materiality in Count 1, the § 3729(a) (1) violation.  *See* Complaint. ¶¶ 56-58.  This omission is further exacerbated by the explicit presence of materiality in Count 2, the § 3729(a)(1) (B) claim:

> First Choice and Dovner knowingly made or caused to be made false statements and false records material to false claims for Zylon vests that were purchased by various agencies with federal funds.

Complaint, ¶ 60.  Apparently, the government believes that materiality is an essential element of a § 3729(a)(1)(B) violation, but not a § 3729(a)(1) claim.  Moreover, the remaining allegations in the Complaint do not save the government, i.e., they do not indicate that any false statements or records were capable of influencing the decision-makers.  Rather, the government declares that, if it knew about the defective vests, it would not have paid First Choice or reimbursed the state, local, or tribal authorities.  Complaint, ¶¶18, 22, 24.  Yet, just because the government would not have paid First Choice or reimbursed the other non-federal entities does not indicate, in any fashion, that any alleged false statements or records

---

[2]      In ¶¶ 25-48 of the Complaint, the government alleges the facts supposedly pertinent to the alleged false claims and/or records.  The government designates that section as "**THE FIRST CHOICE SCHEME.**"  Complaint, p.11.  Thus, even the government admits that it is alleging fraudulent activity, not a FCA case.

[3]      The government's belief that the body armor failed to meet the five-year warranty adds nothing to the FCA analysis.  As the Fourth Circuit held, "[a]n FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision."  *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 378 (4th Cir. 2008).  Of course, "[t]o hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract."  *Id.*; *see also Strum v. Exxon Co.*, 15 F.3d 327, 329-30 (4th Cir. 1994).  Like the Fourth Circuit, this Court should also refuse to vitiate the distinction between fraud and contract claims.

were capable of influencing the agencies.  The complaint is simply devoid of any such allegations, and therefore, Count 1 does not state a claim upon which relief can be granted.[4]

Count 2 also suffers from a fatal defect.  Specifically, on May 20, 2009, Congress enacted the Fraud Enforcement and Recovery Act ("FERA") which, among other alterations to the FCA, amended § 3729(a)(2) and renumbered it as § 3729(a)(1)(B).  Originally, § 3729(a)(2) prohibited anyone who, "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  *See* 31 U.S.C. § 3729(a)(2).  Now, new § 3729(a)(1)(B) imposes FCA liability upon any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  *See* 31 U.S.C. § 3729(a)(1)(B).  In addition, in FERA, Congress explicitly declared that § 3729(a)(1)(B) applies only to claims pending on or after June 7, 2008.  *See United States v. Science Applications International Corp.*, 2009 U.S. Dist. LEXIS 84021 at *43.  Subsequently, this Court held that "claims" for purposes of the possible retroactivity of § 3729(a)(1)(B) means "requests or demands for money or property[,]" not actual cases.  *Id.*, at *45-47.

Thus, with respect to First Choice and Mr. Dovner, the government's § 3729(a)(1)(B) count is valid only if their requests or demands for money relating to the Zylon vests were pending on or after June 7, 2008.  Of course, considering that the government alleges that First Choice and Dovner terminated its sale of Zylon vests in 2005, there is no possible way that First Choice and Mr. Dover had any claims pending as of June 7, 2008, almost three years later.  Complaint, ¶¶ 46-47.  Thus, § 3729(a)(1)B) is inapplicable to this case, and therefore, this Court must dismiss Count 2.  Simply put, without any Zylon claims pending on or after June 7, 2008, First Choice and Mr. Dovner are not subject to § 3729(a)(1)(B) liability.

---

[4]      The warranty also belies the government's claim that, if it had realized the vests were defective, it would not have paid First Choice or reimbursed the state and local agencies.  Such a statement is conclusory, speculative, and ignores the fact that, if the vests were defective, the government, pursuant to the warranty, would have simply returned them to First Choice for replacement ones.  *See* Exhibit A.

## 2. THIS COURT LACKS SUBJECT MATTER
## JURISDICTION OVER THE BREACH OF CONTRACT COUNT

"It is a truism that federal courts are courts of limited jurisdiction; their power to adjudicate does not extend beyond the boundaries Congress has set by statute." *United States v. Unified Industries, Inc.*, 929 F. Supp. 947, 949 (E.D.Va. 1996). With respect to government contracts, Congress enacted the Congress Disputes Act ("CDA"), which "establishes a comprehensive scheme of legal and administrative remedies for the resolution of government contract disputes." *Id.* "The review procedures under the CDA are exclusive of jurisdiction in any other forum. Thus, federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA." *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995). The CDA, however, contains an exception for fraud claims:

> [t]his section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud

41 U.S.C. § 605(a); *see also United States ex rel. Becker v. Tools & Metals, Inc.*, 2009 U.S. Dist. LEXIS 17609 at *24 (N.D. Tx. March 5, 2009).

In this case, however, the government's breach of contract claim does not involve fraud and is not inextricably intertwined with the other fraud counts contained in the Complaint. According to the government, First Choice breached its contract to the government because it contravened the warranty accompanying the body armor, *i.e.*, it provided supposed defective body armor to the government, failed to comply with the warranty or to correct the purported defects in the body armor, and did not identify the allegedly defective material in the body armor. These constitute pure, unadulterated breach of contractual allegation, and are utterly distinct from the purported false statements underlying the remaining fraud counts. In fact, the breach of contract count stands alone. The government's evidence regarding this count stands apart from any theoretical evidence relating to supposed false statements and records. The breach of contract claim is simply not associated with the alleged fraud or

misrepresentations alleged in the Complaint, and therefore, this Court lacks subject matter jurisdiction over Count 3 and must dismiss it. *See United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 224 (D. Md. 1995)(holding that court possessed jurisdiction over breach of contract claims and common law claims because those counts based upon the defendant's fraudulent actions); *see also United States v. United Technologies Corp.*, 2000 U.S. Dist. LEXIS 6219 at *5-12 (S.D. Oh. March 20, 2000)(same).

### 3. THIS COURT MUST ALSO DISMISS THE EQUITABLE CLAIMS OF PAYMENT BY MISTAKE AND UNJUST ENRICHMENT

"[A]t the motion to dismiss stage, courts in this district . . . have permitted the government to proceed with claims alleging FCA violations as well as claims for unjust enrichment and payment by mistake." *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 79 (D.D.C. 2003)(citing *United States v. Bouchey*, 860 F. Supp. 890, 892-94 (D.D.C. 1994)). This rule, however, is not absolute. "[C]ourts . . . have granted motions to dismiss an unjust enrichment claim in light of the existence of an express contract . . . and that allegations of an express contract may warrant dismissal of an unjust enrichment claim at the motion-to-dismiss stage[.]" *Id.*; *see also United States v. United Techs. Corp.*, 51 F. Supp. 2d 167, 200 (D. Conn. 2000)(common law claims of unjust enrichment and payment by mistake are inappropriate where an express contract exists); *United States v. EER Sys. Corp.*, 950 F. Supp. 130, 133 (D. Md. 1996)(same).

This case fits perfectly within the exception to the rule allowing the government to plead alternative theories of liability. The government alleges that an express contract between First Choice and the government existed, *i.e.*, Count 3, and therefore, the existence of this express contract bars the government from raising its claims of payment by mistake and unjust enrichment. As this Circuit aptly stated:

> there can be no claim for unjust enrichment when an express contract exists between the parties.

*Albrecht v. Comm. On Employee Benefits of the Fed. Reserve Employee Benefits Sys.*, 357
F.3d 62, 69 (D.C. Cir. 2004)(quoting *Schiff v. AARP*, 697 A.2d 1193, 1194 (D.C. 1997)).
Consequently, this Court should adhere to precedent and, based upon the existence of an
express contract, dismiss Counts 4-5, the equitable claims of payment by mistake and unjust
enrichment. Such an order would be consistent with the law.[5]

## 4.   THE FRAUDULENT CONVEYANCE COUNTS ALSO FAIL TO PASS MUSTER

In Counts 6-8 of the Complaint, the government alleges that First Choice, Mr. Dovner,
and Ms. Herman, subsequent to the government's initiating an investigation into the company,
caused First Choice to transfer funds to Mr. Dovner and Ms. Herman, and then Mr. Dovner
used such funds to purchase a jet and two automobiles. Complaint, ¶¶ 75-88. According to
the government, because, at the time of these distributions, First Choice owed the government
a minimum of $2.3 million in damages because of the allegedly defective body armor, First
Choice, Mr. Dovner, and Ms. Herman violated 28 U.S.C. §§ 3304(a)(1), (b)(1)(A), and
(b)(1)(B) of the FDCPA. Once again, however, the government's allegations fail to amount to
a violation of any of these statutory provisions.

Title 28 U.S.C. § 3304 (b)(1)(A)-(B) states:

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to
> the United States which arises before the transfer is made or the obligation is
> incurred if—the debtor makes the transfer or incurs the obligation without
> receiving a reasonably equivalent value in exchange for the transfer and
> obligation; and the debtor is insolvent at that time or the debtor becomes
> insolvent as a result of the transfer or obligation[.]

28 U.S.C. § 3304(a)(1)(A)-(B). § 3304(b)(1)(A) provides in pertinent part that:

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to
> the United States, whether such debt arises before or after the transfer is made
> or the obligation is incurred, if the debtor makes the transfer or incurs the
> obligation . . . with actual intent to hinder, delay, or defraud a creditor[.]"

---

[5]      Given the existence of an express contract, the rationale underlying the dismissal of the
equitable claims is logical: the government possesses a complete and adequate remedy at law.
*Purcell*, 254 F. Supp. 2d at 78.

28 U.S.C. § 3304 (b)(1)(A).  § 3304(b)(1)(B) declares in pertinent part that:

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to
> the United States, whether such debt arises before or after the transfer is made
> or the obligation is incurred, if the debtor makes the transfer or incurs the
> obligation . . . without receiving a reasonably equivalent value in exchange for
> the transfer or obligation if the debtor . . . intended to incur, or believed or
> reasonably should have believed that he would incur, debts beyond his ability to
> pay as they became due."

28 U.S.C. § 3304(b)(1)(B)(ii).  By their explicit terms, therefore, these statutory provisions

require that the defendant owe a debt to the United States.[6]

Yet, in this case, the defendants did not owe a debt to the government.[7]  According to

the government:

> First Choice owed the United States a minimum of $2.3 million in single
> damages for the defective Zylon bullet-proof vests paid for with federal funds.
> This amount constitutes a "debt" under 28 U.S.C. § 3304(a)(1).

Complaint, ¶¶ 76, 81, 86.[8]  Thus, because the defendants were not suffering under any judgment

or court order mandating the payment of money to the government, the government must be

claiming that the sale of the defective vests created a debt to the government.  *See Federal Trade*

*Commission v. National Business Consultants, Inc.*, 376 F.3d 317, 319 (5th Cir. 2004)("The

---

[6]      28 U.S.C. § 3002(3)(B) defines "debt" as:
> [a]n amount that is owing to the United States on account of a fee, duty, lease,
> rent, service, sale of real or personal property, overpayment, fine, assessment,
> penalty, restitution, damages, interest, tax, bail bond forfeiture,
> reimbursement, recovery of a cost incurred by the United States, or other
> source of indebtedness to the United States, but that is not owing under the
> terms of a contract originally entered into by only persons other than the United
> States[.]

28 U.S.C. § 3002(3)(B).
[7]      Whether a debt "is owing" is of critical importance to any FDCPA analysis.
According to this Court, "[t]he legislative history of the FDCPA indicates that it was enacted
for the purpose of reimbursing the federal government for 'delinquent debts' . . . [and] [w]ith
the exception of prejudgment debts, which are only available when the amount owed may
become unavailable through the course of litigation, nothing suggests that the intent of the
FDCPA was to impose additional financial obligations upon parties engaging in ongoing
litigation." *Gonzalez v. Department of Labor*, 603 F. Supp. 2d 137, 146 (D.D.C.
2009)(citation omitted).
[8]      28 U.S.C. § 3304(a)(1) does not define "debt."  Rather, § 3002(3)(A)-(B) defines
"debt." 28 U.S.C. § 3002(3)(A)-(B).

Motion to Dismiss
Page 13

FDCPA applies only to amounts owing as debts."). Such a theory, however, ignores the warranty accompanying this product. Based upon the warranty, the defendants did not owe anything to the government until—and if—it breached its warranty, *i.e.*, the defendants refused to repair or to replace the purportedly defective body armor. The Complaint, however, fails to allege any such breach, and consequently, the government's premise that the defendants owed a debt to the government simply because of its sale of the allegedly defective vests cannot hold water. *See United States v. Vernor*, 2005 U.S. Dist. LEXIS 46546 at * 12-13 (W.D. Tx. February 11, 2005) (no summary judgment in § 3304(b)(1)(A) proceeding where genuine issue of fact existed with respect to whether defendant owed a debt to the government at the time of the disputed transfer).   Consequently, this Court must dismiss Counts 6-8.[9]

## 5. THE FRAUD COUNTS FAIL
## TO CONTAIN THE REQUISITE PARTICULARITY

Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In FCA cases, pursuant to 9(b), the plaintiff, "must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *United States ex rel Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)(citation omitted). "This means, *inter alia*, that 'a relator must provide details that identify particular false claims for payment that were submitted to the

---

[9] A debtor becomes insolvent when "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 28 U.S.C. § 3302(a).  The government attempts to establish this element of § 3304(a)(1) with conclusory statements that the transfers rendered First Choice insolvent, and that the distributions exceeded Ms. Herman's tax liability for the particular years in question.  Complaint, ¶¶ 2, 50.  Yet, conclusory allegations of insolvency and the fact that the distributions might have exceeded Ms. Herman's tax liability certainly fail to establish, even accepting such allegations as true, that the distributions caused First Choice to become insolvent, *i.e.*, that First Choice's debts exceeded its assets at fair market valuation.  Indeed, the Complaint omits any mention of such a calculation.

government.'" *United States ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 74 (D.D.C. 2008)(quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232 (1ˢᵗ Cir. 2004). Additionally, the plaintiff must identify which defendant uttered the false statements. *Cannon*, 642 F.2d at 1385. Indeed, in cases involving multiple defendants, 9(b) mandates that the plaintiff "delineate among defendants' responsibility for [the] allegedly fraudulent activities." *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292, 303 (D.D.C. 1996); *see also In re Haven, Inc.*, 462 F. Supp. 172 (S.D.N.Y. 1978).

In this case, the Complaint is silent as to any of the particulars that 9(b) requires. For example, the government fails to specify the precise false statements that First Choice supposedly submitted to the government. Instead, the government refuses upon general, conclusory verbiage:

> As a result of First Choice and Dovner's conduct and representations, the United States paid for defective Zylon body armor.
>
> By the actions set forth in Paragraphs 25-48 of the Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and did not comply with their five-year warranty. Notwithstanding this knowledge, First Choice and Dovner misrepresented the suitability of Zylon in ballistic applications. For these reasons, First Choice and Dovner knowingly presented or caused false claims to be presented to the federal government and knowingly made or caused to be made false statements to get false claims paid.
>
> By the actions set forth in Paragraphs 25-48 of the Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and would not meet their five-year warranty. For these reasons, First Choice and Dovner knowingly caused false claims to be presented to the federal government.
>
> By the actions set forth in Paragraphs 25-48 of the Complaint, First Choice and Dovner knew that the Zylon in these vests was defective and degraded substantially and quickly and did not meet their five-year warranty. For these reasons, First Choice and Dovner knowingly caused false claims to be presented to the federal government.

Complaint, ¶¶ 2, 17, 21, 23. These allegations provide no specificity with respect to the purported content of any false misrepresentation. They simply identify certain "representations" and "misrepresentations" without describing the fact misrepresented, the

individual submitting such a claim, or the time period when such a submission was made. Such allegations fail to satisfy 9(b). *See Martin v. Arc of the District of Columbia*, 541 F. Supp. 2d 77, 82 (D.D.C. 2008) (plaintiff's complaint contravened 9(b), in part, because she failed to allege who submitted the alleged false claim and when it was transmitted).

Furthermore, the FCA Counts do not provide any of the requisite specificity. Counts 1-2 are couched in general terms without identifying the specific misrepresentation, the time and place of such false statements, or each defendant's precise role in allegedly making these false statements to the government.[10] In other words, consistent with the nebulous allegation permeating the rest of Complaint, Counts 1-2 "contain no circumstantial information that would allow [the defendants] to identify the specific fraudulent claims in question or defend against the charges." *United States ex. Rel Sallade v. Orbital Sciences Corp.*, 2008 U.S. Dist. LEXIS 4332 at *16 (D. Az. January 4, 2008). Thus, as a matter of law, this Court must dismiss the FCA Counts because they fail to contain the particularity that 9(b) requires. Considering that the government has expended over three years in investigating the defendants, it simply lacks any justifiable excuse to submit such a vague Complaint. *See Wanko v. Catholic University of America*, 2009 U.S. Dist. LEXIS 87177 at *13-14 (D.D.C. September 23, 2009) (unsupported nebulous allegations fail to comply with 9(b)).

The fraudulent conveyance counts also fail to pass 9(b)'s mandate. *See United States v. Maxwell*, 189 F. Supp. 2d 395, 399 (E.D. Va. 2002)(applying 9(b)'s requirements to fraudulent conveyances). "As a general rule, pleadings made upon 'information and belief' do not satisfy 9(b)'s particularity requirement." *United States ex rel. Davis v. District of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008).[11] One of the reasons for this rule is that

---

[10]   Apparently, the government believes that the defendants made false statements to the government because they supposedly knew of the defective body armor and continued to sell them to the government. Complaint, ¶¶ 57, 60. Yet, as discussed *supra*, the FCA applies only to false claims or records.

[11]   An exception to this rule exists in *qui tam* cases where defendants frequently possess the material necessary to fulfill 9(b)'s particularity requirement. *Davis*, 591 F. Supp. 2d at

9(b) is designed, in part, to "'prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs.'" *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279, n.3 (D.C. Cir. 1994)(quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).

Of course, in this case, the government has done exactly what 9(b) prohibits. Specifically, approximately 85% of the allegations (6/7) contained in the fraudulent conveyance section are premised upon "information and belief." Complaint, ¶¶ 49-55. Moreover, the Complaint contains three other paragraphs concerning the alleged fraudulent conveyance counts that are also based "upon information and belief." Complaint, ¶¶9-11. Furthermore, the government makes no attempt to conceal its desire to engage in discovery regarding its fraudulent conveyance allegations:

> [t]he United States anticipates that a reasonable opportunity for further investigation and discovery will establish that the purpose of the existence of these corporate entities was to insulate Dovner from potential liability and to hide his ownership of a Ferrari, Maserati, and a private jet aircraft.

Complaint, ¶ 12.  At the end of the day, therefore, the government alleges three fraudulent conveyance counts based "upon information and belief," and then, requests this Court to allow it to engage in discovery to confirm its speculative claims.  The problem with the government's theory, however, is that 9(b) prohibits such conduct.  Consequently, this Court should dismiss the fraudulent conveyance counts.  It should not permit the government, after investigating the defendants for over three years, to allege fraud counts based upon "information and belief," especially considering that the government admits that it needs further discovery regarding these counts.

---

(continued)
37. Of course, in this case, the exception is inapplicable because the government's allegations based upon "information and belief" relate primarily to the fraudulently conveyance counts and, equally as important, the government has expended its resources for over three years in its investigation of the defendants.

## C. CONCLUSION

After spending multiple years investigating the defendants, the government presents itself to this Court with a complaint that reflects erroneous legal theories and disregard for the law. Fortunately for the defendants, Fed. R. Civ. P.12 (b)(1), (6), and 9(b) constitute insurmountable legal obstacles for the government. This Court, therefore, after applying the law underlying these rules, will have no choice but to dismiss the government's complaint against the defendants in its entirety. Such a decision would be in the interests of justice and would finally end this nightmare for the defendants.

Respectfully submitted this 2nd day of November, 2009.

By: _____

Stanley M. Brand, #213082
Ross A. Nabatoff, #376665
BRAND LAW GROUP
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700
Attorneys for First Choice Armor & Equipment, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2d day of November, 2009, a true and correct copy of *Defendant First Choice Armor & Equipment, Inc., Edward Dovner, Karen Herman, Exotic Cars LLC, Excel Aviation, LLC, and MRSA Jets, LLC's Motion to Dismiss* was served via first-class mail on the following:

Michael D. Granston, Esq.
Alan E. Kleinburd, Esq.
Alicia Bentley, Esq.
Callie R. Owen, Esq.
A. Thomas Morris, Esq.
Jennifer Chorpening, Esq.
U.S. Department of Justice
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 616-9854

_____
Ross A. Nabatoff