UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
UNITED STATES OF AMERICA,       )
                               )
            Plaintiff,          )
                               )
            v.                  )     Civil Action No. 09-1458 (RWR)
                               )
FIRST CHOICE ARMOR &            )
EQUIPMENT, INC. et al.,         )
                               )
            Defendants.         )
_____)
```

MEMORANDUM OPINION AND ORDER

The government filed a complaint against defendants First Choice Armor & Equipment, Inc., its founder Edward Dovner, Dovner's wife and First Choice's president and sole shareholder Karen Herman, Exotic Cars LLC, Excel Aviation, LLC, and MRSA Jets, LLC, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and fraudulent conveyances under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 et seq., as well as claims of common law breach of contract, payment by mistake, and unjust enrichment in connection with the sale of Zylon body armor. The defendants have moved to dismiss. Because the government has sufficiently alleged its FCA and fraudulent conveyance claims, and because the government's FCA allegations also form the basis for its breach of contract claim, the defendants' motion to dismiss will be denied with respect to these claims. Because the government alleges the

existence of an express contract with First Choice for direct agency and GSA purchases of bulletproof vests, the payment by mistake and unjust enrichment claims against First Choice will be dismissed with respect to these purchases but not with respect to state, local, or tribal purchases. The motion to dismiss the unjust enrichment claim against Dovner and Herman also will be denied.

BACKGROUND

The complaint alleges the following facts. First Choice purchased the synthetic fiber "Zylon" for use in the manufacture of bulletproof vests, which it sold between early 2000 and August 2005. (Compl. ¶¶ 25-26.) First Choice contracted with Lincoln Fabrics Ltd., which wove Zylon fiber into fabric for use in First Choice vests. (Id. ¶ 26.) "From 2000 to 2005, First Choice's marketing emphasized thin and lightweight Zylon vests as a critical element of its sales pitch to the United States' body armor market." (Id. ¶ 29.) First Choice sold vests to federal agencies and to state, local, and tribal law enforcement authorities under the Bullet Proof Vest Grant Partnership Act ("BPVGPA") Program, under which the federal government reimbursed these authorities for up to fifty percent of the costs of the body armor. (Id. ¶¶ 15-24.) During the time it sold its Zylon vests, First Choice issued an industry-standard five-year warranty on them. (Id. ¶ 30.) The federal government paid First

Choice at least $2.47 million for more than 7,000 Zylon vests. (Id. ¶¶ 17, 21.)

The government alleges that beginning in 2001, First Choice and Dovner learned that raw Zylon degraded as it aged and when it was exposed to light, heat, and humidity. In July 2001, Toyobo, the manufacturer of Zylon, informed First Choice and Dovner that Zylon's tensile strength decreased in high heat and humidity (id. ¶ 35), and DSM, a Dutch company that manufactured Zylon products, announced that it was postponing introducing Zylon products to market because of concerns about its ballistics resistance. (Id. ¶ 34.) Toyobo informed First Choice and Dovner in August 2001 and then again in November 2001 that the "degradation problem was worse than Toyobo had first indicated." (Id. ¶¶ 36, 38.) In October 2003, Toyobo disclosed to First Choice and Dovner data from fiber strength tests Toyobo conducted on woven Zylon –– which approximated more closely the condition of Zylon in First Choice's vests than did raw Zylon –– showing more serious degradation than Toyobo's data on raw Zylon had suggested. (Id. ¶ 45.)

First Choice sought guidance from Cheung Lie Ting, the ISO 9000 quality specialist for Lincoln Fabrics,[1] about how to

---

[1] "The ISO 9000 Standards are a set of guidelines created by the International Organization for Standardization that assure that businesses meet certain quality control and management standards." (Compl. ¶ 2 n.1.)

respond to the degradation data, and Ting "recommended that First
Choice [add more] layers of ballistic resistant materials to
compensate for the Zylon degradation." (Id. ¶¶ 2, 37.)
Additionally, Doug Van der Pool, First Choice's Vice President of
Sales, reported to Dovner that other manufacturers were modifying
their Zylon vests to compensate for the degradation. (Id.
¶¶ 41, 44.) "But First Choice and Dovner ignored th[ese]
warning[s], failed to add any more protective layers, and
continued to market their Zylon vests as suitable for ballistic
protection and as the thinnest and lightest vests available on
the market." (Id. ¶ 2.) And, in August 2003, "First Choice
issued a press release claiming that its vests were different
from that of the competition . . . and were thicker and had
higher ariel density than the competition's vests." (Id. ¶ 43.)

First Choice discontinued sales of its 100% Zylon vests in
April 2004 and discontinued sales of all Zylon vests in
August 2005. (Id. ¶¶ 46, 47.) After learning of the
government's investigation regarding Zylon, Dovner and Herman
removed more than $5 million from First Choice, causing the
company to become insolvent. (Id. ¶ 50.) The government alleges
that Dovner and Herman used these funds to purchase a Ferrari, a
Maserati, and a private jet. (Id. ¶¶ 51-55.)

The government filed this complaint asserting claims against
First Choice and Dovner for FCA violations involving presenting

fraudulent claims (Count 1) and making false statements
(Count 2), against First Choice for common law breach of contract
(Count 3) and payment by mistake (Count 4), and against First
Choice, Dovner and Herman for common law unjust enrichment
(Count 5) and for making fraudulent conveyances (Counts 6, 7, 8).
The defendants have moved under Federal Rule of Civil Procedure
12(b)(6) to dismiss for failure to state a claim and to
sufficiently plead with particularity the FCA and fraudulent
conveyance counts, and for failure to state a claim the payment
by mistake and unjust enrichment counts.  The defendants also
have moved under Rule 12(b)(1) to dismiss for lack of subject-
matter jurisdiction the breach of contract count.

DISCUSSION

I.    FAILURE TO STATE A CLAIM

     In evaluating a Rule 12(b)(6) motion, a court "'may consider
only the facts alleged in the complaint, any documents either
attached to or incorporated in the complaint and matters of which
[a court] may take judicial notice.'"  Trudeau v. FTC, 456 F.3d
178, 183 (D.C. Cir. 2006) (quoting EEOC v. St. Francis Xavier
Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)).  A court
considering a Rule 12(b)(6) challenge must accept as true any
facts alleged by the plaintiff and grant all reasonable
inferences drawn from those facts.  Browning v. Clinton, 292 F.3d
235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>

Rule 9(b) applies to FCA actions.  <u>United States ex rel. Totten v. Bombardier Corp.</u>, 286 F.3d 542, 551-52 (D.C. Cir. 2002) (noting that every circuit to consider the issue has held that Rule 9(b) applies to FCA complaints).  It provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Motions to dismiss for failure to plead fraud with sufficient particularity are evaluated in light of the overall purposes of Rule 9(b) to "ensure that defendants have adequate notice of the charges against them to prepare a defense[,]" <u>United States ex rel. McCready v. Columbia/HCA Healthcare Corp.</u>, 251 F. Supp. 2d 114, 116 (D.D.C. 2003), discourage "suits brought solely for their nuisance value" or as "frivolous accusations of moral turpitude[,]" <u>United States ex rel. Joseph v. Cannon</u>, 642 F.2d 1373, 1385 (D.C. Cir. 1981), and "'protect reputations of . . .

professionals from scurrilous and baseless allegations of
fraud[.]'" Id. at 1385 n.103 (alteration in original) (quoting
Felton v. Walston & Co., Inc., 508 F.2d 577, 581 (2d Cir. 1974)).

Rule 9(b) does not abrogate Rule 8, and must be read in
light of Rule 8's requirement that allegations be simple,
concise, and direct, and short and plain statements of each
claim. Joseph, 642 F.2d at 1386; see also United States ex rel.
Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d
258, 269 (D.D.C. 2002) ("While . . . Rule 9(b) requires more
particularity than Rule 8, . . . Rule 9(b) does not completely
vitiate the liberality of Rule 8."). In an FCA action, Rule 9(b)
requires that the pleader "'state the time, place and content of
the false misrepresentations, the fact misrepresented and what
was retained or given up as a consequence of the fraud[,]' . . .
[and] individuals allegedly involved in the fraud." United
States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd., 389
F.3d 1251, 1256 (D.C. Cir. 2004) (quoting Kowal v. MCI
Communic'ns Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994)). "In
sum, although Rule 9(b) does not require plaintiffs to allege
every fact pertaining to every instance of fraud when a scheme
spans several years, defendants must be able to 'defend against
the charge and not just deny that they have done anything
wrong.'" Id. at 1259 (quoting United States ex rel. Lee v.
SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001));

accord McCready, 251 F. Supp. 2d at 116 (reasoning that a court
"'should hesitate to dismiss a complaint under Rule 9(b) if the
court is satisfied (1) that the defendant has been made aware of
the particular circumstances for which she will have to prepare a
defense at trial, and (2) that plaintiff has substantial
prediscovery evidence of those facts'" (quoting Harrison v.
Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.
1999))).

A.  Presenting false claims

The FCA created a cause of action against anyone who
"knowingly presents, or causes to be presented, to an officer or
employee of the United States Government . . . a false or
fraudulent claim for payment or approval[.]"  31 U.S.C.
§ 3729(a)(1) (2000).[2]  See also United States ex rel. Siewick v.
Jamieson Sci. & Eng'g, Inc., 214 F.3d 1372, 1374 (D.C. Cir.
2000).  "[T]he elements of section 3729(a)(1) are (1) the
defendant submitted a claim to the government, (2) the claim was
false, and (3) the defendant knew the claim was false."  United

---

[2] Congress amended the FCA in the Fraud Enforcement and
Recovery Act of 2009, altering slightly the language in the
presentment provision.  The amendment of the presentment
provision took "effect on the date of enactment of this Act and
shall apply to conduct on or after the date of enactment[.]"
P.L. 111-21, § 4 at 1625.  Since the alleged conduct here
occurred before 2009, the provision as amended in 2009 does not
apply here, and references in this opinion to § 3729(a)(1) are to
the pre-amendment version.

<u>States ex rel. Harris v. Bernad</u>, 275 F. Supp. 2d 1, 6 (D.D.C. 2003).

The defendants argue that the government has not alleged sufficiently the falsity of any claim.  (Def.'s Mot. to Dismiss ("Def.'s Mot.") at 7.)  A claim may be false under the FCA if it is either factually or legally false.  <u>United States v. Sci. Applications Int'l Corp.</u>, 555 F. Supp. 2d 40, 49 (D.D.C. 2008) ("<u>SAIC I</u>").  A claim can be "factually false if it invoices for services that were not rendered" or incorrectly describes goods or services provided.  <u>United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.</u>, 498 F. Supp. 2d 25, 64 (D.D.C. 2007).  Alternatively, a claim is legally false if it contains an express false certification -- that is, "a claim that falsely certifies compliance with a particular statute, regulation or contractual terms, where compliance is a prerequisite for payment."  <u>Id.</u> (internal quotations marks omitted).  A claim also may be legally false under an implied certification theory.  <u>Id.</u> One way to plead a false claim under this theory is to plead "that the contractor withheld information about its noncompliance with material contractual requirements."[3]  <u>United States v. Sci.</u>

_____

[3] Another way is to plead that the government would not have paid funds to a party had it known of a violation of a law or regulation, and "the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent."  <u>United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.</u>, 251 F. Supp. 2d 28, 33 (D.D.C. 2003).

Applications Int'l Corp., 626 F.3d 1257, 1269 (D.C. Cir. 2010)
("SAIC III").  A contractual requirement can be considered
material if "both parties to the contract understood that payment
was conditional on compliance with the requirement at issue."
Id.; see also United States v. TDC Mgmt. Corp., Inc., 288 F.3d
421, 426 (D.C. Cir. 2002) (noting that withholding "'information
critical to the decision to pay'" is a false claim (quoting Ab-
Tech Constr., Inc. v. United States, 31 Fed. Cl. 429, 434 (Fed.
Cl. 1994))).

The government alleges that it believed it was purchasing
vests that met the industry-standard five-year warranty against
defects.  (See Compl. ¶¶ 17-18, 30.)  Additionally, the
government alleges that the defendants failed to disclose
information that revealed that the vests degraded more quickly
than First Choice represented in its marketing materials and that
cast doubt on the vests' ability to satisfy the five-year
warranty.  (See id. ¶¶ 2, 33-41, 43-47.)  The defendants "knew
. . . that the Zylon bullet-proof vests First Choice sold were
defective and degraded more quickly than First Choice and Dovner
represented."  (Id. ¶ 2.)  Ting warned the defendants to add
additional layers to their vests, but the defendants "failed to
add any more protective layers, and continued to market their
Zylon vests as suitable for ballistic protection and as the
thinnest and lightest vests available on the market."  (Id.)

Further, the government would not have paid or reimbursed the claims for payment for the First Choice Zylon vests if it "had known that the Zylon in the vests degraded much more rapidly than disclosed[.]"[4] (Compl. ¶18; see also id. ¶¶ 22, 24.)

Because the government does not allege in the complaint that the defendants invoiced for services not rendered or described incorrectly the goods First Choice provided, the government has not pled that the defendants submitted a factually false claim. Nor has the government pled an express false certification claim, since the complaint does not allege that any of the relevant contracts contained express provisions requiring five-year warranties against defects. Rather, the government has pled that it understood to be a condition of payment the requirement that the vests satisfy the five-year industry standard warranty by remaining fit for use as body armor for five years. (Id. ¶¶ 30, 57.) Although the government does not state directly in its

_____

[4] Although the defendants argue that the government has failed to state a claim under § 3729(a)(1) because the allegations underlying Count 1 of the complaint fail to include the word "material" (Def.'s Mot. at 8), the defendants cite no authority for the proposition that the word "material" carries such talismanic import. Rather, to satisfy the materiality requirement, a complaint must allege merely "that the government would not have honored the claim presented to it if it were aware of the violation." Barrett, 251 F. Supp. 2d at 33. The government's allegations that it would not have paid for the vests had it known about Zylon's degradation are sufficient to satisfy this requirement. See United States v. Honeywell Int'l Inc., Civil Action No. 08-961 (RWR), 2011 WL 2672624, at *4-5 (D.D.C. July 8, 2011).

complaint that the defendants also understood such requirements to be conditions of payment, when construed in the light most favorable to the government, the allegations that even when presented with the degradation data, First Choice made no change in how it marketed its vests or in the length of the warranty are sufficient to plead that the defendants also understood payment to be conditioned upon compliance with these requirements. Thus, these allegations are sufficient to satisfy the materiality requirement and to state an implied certification claim with respect to a contractual condition. See United States v. Honeywell Int'l Inc., Civil Action No. 08-961 (RWR), 2011 WL 2672624, at *5 (D.D.C. July 8, 2011). The government sets out in detail the time, place, and content of the false representations and identifies individuals allegedly involved in the fraud, such that its allegations satisfy the requirements of Rule 9(b).

The defendants argue that the government has misconstrued the relevant warranty as one that guaranteed service for five years and that First Choice warranted only that it would replace or repair a defective shield within five years of its retail purchase. (Def.'s Mot. at 7 n.1.) The defendants cite in support of their argument a warranty that they have attached to their motion to dismiss. (Id., Ex. A.) This warranty is not attached to the complaint and need not be considered in assessing whether the complaint adequately pleads a cause of action.

See St. Francis Xavier Parochial Sch., 117 F.3d at 624 n.3
(refusing to consider materials not attached to the pleadings
when reviewing district court ruling on a motion to dismiss).
Moreover, even if the defendants had claimed -- which they have
not -- that the warranty they cite was standard for the sales of
all First Choice vests, the defendants' argument raises questions
of fact that are more appropriately resolved after discovery
closes, such as the scope of the warranty and whether First
Choice issued that precise warranty upon each vest sale.  See
Thompson v. Fathom Creative, Inc., 626 F. Supp. 2d 48, 52-53
(D.D.C. 2009) (noting that pre-discovery summary judgment motions
are disfavored).  Thus, these factual issues will not be resolved
at the motion to dismiss stage of the litigation, where the
plaintiff's factual allegations are accepted as true.
See Honeywell, 2011 WL 2672624, at *5.

    B.   False statements

    The government alternatively pleads a claim under 31 U.S.C.
§ 3729(a)(1)(B), which creates a cause of action against anyone
who "knowingly makes, uses, or causes to be made or used, a false
record or statement material to a false or fraudulent claim."
This false statements provision of the FCA was enacted in 2009
when the Fraud Enforcement and Recovery Act ("FERA") amended the
previous version which had created a cause of action against
anyone who "knowingly makes, uses, or causes to be made or used,

a false record or statement to get a false or fraudulent claim
paid or approved by the Government." 31 U.S.C. § 3729(a)(2)
(2000).  FERA provided for § 3729(a)(1)(B)'s retroactive
application "to all claims under the False Claims Act . . . that
are pending on or after" June 7, 2008.  P.L. 111-21, § 4 at 1625.
The word "claims," as it applies in the relevant provision,
refers to "a defendant's request for payment" and not to "civil
actions for FCA violations."  <u>United States v. Sci. Applications
Int'l Corp.</u>, 653 F. Supp. 2d 87, 107 (D.D.C. 2009), <u>vacated in
part and remanded on other grounds by</u> <u>SAIC III</u>, 626 F.3d 1257.

The defendants argue that since § 3729(a)(1)(B) cited in
Count 2 applies only to claims for payment pending on or after
June 7, 2008, which post-dates all claims alleged in the
complaint, Count 2 must be dismissed.  (Def.'s Mot. at 9.)
However, that no requests for payment at issue here were pending
after June 7, 2008 does not warrant dismissing the false
statement count.  The unamended § 3729(a)(2) provision admittedly
applies to the claims for payment.  <u>See</u> <u>Honeywell</u>, 2011 WL
2672624, at *7 n.7.  Even though the complaint erroneously cites
and employs some text from the amended statutory provision, the
complaint provides ample notice to the defendants that the
government is bringing claims under the FCA's false statement
provision.  <u>See</u> <u>Delfani v. U.S. Capitol Guide Bd.</u>, Civil Action
No. 03-949 (RWR), 2005 WL 736644, at *5 n.6 (D.D.C. Mar. 31,

2005) (declining to dismiss causes of action asserted "under the
wrong statutory citations" because "plaintiff's allegations are
sufficient to put defendant on notice of her claims, and given
the liberal pleading . . . standards set forth in Rule[] 8").

Section 3729(a)(2) attaches FCA liability to a defendant who
prepares in support of a claim a statement it knows to be a
misrepresentation, even if that defendant did not actually submit
either the claims or the statement to the government.  United
States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 501
(D.C. Cir. 2004) (noting that "(a)(2) is complementary to (a)(1),
designed to prevent those who make false records or statements
. . . from escaping liability solely on the ground that they did
not *themselves* present a claim for payment or approval"); see
also Harris, 275 F. Supp. 2d at 6 (noting that "the main purpose
of section 3729(a)(2) is to remove any defense that the
defendants themselves did not submit false claims to the
government").  To prove a violation of the false statements
provision, "a plaintiff must show that (1) the defendant created
a record and used this record to get the government[] to pay its
claim, (2) the record was false, and (3) the defendants knew that
the record was false."  Harris, 275 F. Supp. 2d at 6.  The
defendants do not argue that the government's allegations are
insufficient to satisfy these requirements.  The government has

pled adequately a violation of the unamended false statements
provision.

C.    Equitable claims

The defendants argue that the government cannot
simultaneously proceed on its FCA claims and its claims of
payment by mistake and unjust enrichment.  (Def.'s Mot. at 11.)
Rule 8(d)(2) allows a plaintiff to plead alternative theories of
liability.  Accordingly, "at the motion-to-dismiss stage, courts
in this district . . . have permitted the government to proceed
with claims alleging FCA violations as well as claims for unjust
enrichment or payment by mistake."  United States ex rel. Purcell
v. MWI Corp., 254 F. Supp. 2d 69, 79 (D.D.C. 2003).  However, "it
does not appear that the D.C. Circuit has [wavered] from the rule
that 'there can be no claim for unjust enrichment when an express
contract exists between the parties.'"  SAIC I, 555 F. Supp. 2d
at 59-60 (quoting Albrecht v. Comm. on Employee Benefits of Fed.
Reserve Employee Benefits Sys., 357 F.3d 62, 69 (D.C. Cir.
2004)).  Allegations in a complaint that an express contract
existed between the parties, therefore, preclude a plaintiff from
proceeding on alternative theories of FCA liability and unjust
enrichment or payment by mistake.  See Purcell, 254 F. Supp. 2d
at 79.

Here, the government acknowledges that its complaint alleges
the existence of an express contract between First Choice and the

United States with respect to vest purchases through the GSA
program and through agencies' direct purchases.  However, the
government's complaint does not allege an express contract
between First Choice and the government with respect to vests
that state, local, and tribal authorities purchased under the
BPVGPA.  (U.S. Resp. to Defs.' Mot to Dismiss ("U.S. Resp.") at
18; Compl. ¶¶ 17, 23.)  The defendants' motion to dismiss the
payment by mistake count and the unjust enrichment count as to
First Choice therefore will be granted with respect to purchases
through the GSA program and direct agency purchases and denied
with respect to purchases under the BPVGPA.  Because the
government's complaint does not allege an express contract
between the government and defendants Dovner and Herman, the
defendants' motion to dismiss the unjust enrichment claim will be
denied with respect to these defendants.

D.   Fraudulent conveyances

The FDCPA provides "the exclusive civil procedures for the
United States . . . to obtain, before judgment on a claim for a
debt, a remedy in connection with such claim."  28 U.S.C.
§ 3001(a).  The government alleges claims under 28 U.S.C.
§ 3304(a)(1), which provides that

> a transfer made or obligation incurred by a debtor is
> fraudulent as to a debt to the United States which
> arises before the transfer is made or the obligation is
> incurred if . . . the debtor makes the transfer or
> incurs the obligation without receiving a reasonably
> equivalent value in exchange for the transfer or

> obligation; and . . . the debtor is insolvent at that
> time or the debtor becomes insolvent as a result of the
> transfer or obligation[.]

The government also alleges claims under 28 U.S.C. § 3304(b)(1),

which provides that "a transfer made or obligation incurred by a

debtor is fraudulent as to a debt to the United States, whether

such debt arises before or after the transfer is made or the

obligation incurred, if the debtor makes the transfer or incurs

the obligation" either "with actual intent to hinder, delay, or

defraud a creditor[,]" 28 U.S.C. § 3304(b)(1)(A), or

> without receiving a reasonably equivalent value in
> exchange for the transfer or obligation if the debtor
> . . . was engaged or was about to engage in a business
> or transaction for which the remaining assets of the
> debtor were unreasonably small in relation to the
> business or transaction; or . . . intended to incur, or
> believed or reasonably should have believed that he
> would incur, debts beyond his ability to pay as they
> became due.

28 U.S.C. § 3304(b)(1)(B).

1. Debt

The defendants argue that the government has failed to state

a claim under the FDCPA because the defendants did not owe a debt

to the government, as required by 28 U.S.C. § 3304. (Def.'s Mot.

at 13.) A debt is defined by the FDCPA as including "an amount

that is owing to the United States on account of a . . . penalty

[or] damages[.]" 28 U.S.C. § 3002(3)(B). Because the FDCPA

allows the United States to obtain a remedy <u>before</u> judgment on a

claim or a debt, the government can proceed under the statute

when it alleges against a defendant claims under the FCA,
regardless of whether judgment has been entered on those claims.
See <u>United States ex rel. Doe v. DeGregorio</u>, 510 F. Supp. 2d 877,
883-84 (M.D. Fla. 2007).  Conceptually, a party that violates the
FCA incurs a debt to the government as soon as the government
pays the fraudulent claim.  <u>Id.</u>  Thus, by alleging that the
defendants submitted false claims and made false statements under
the FCA, the government sufficiently alleges the existence of a
debt under the FDCPA.[5]

    2.   Particularity

The defendants also argue that the government's allegations
with respect to the FDCPA counts do not satisfy Rule 9(b)'s
particularity requirements because many of the government's
allegations are on information and belief.  (Def.'s Mot. at 16-
17; Compl. ¶¶ 50-55.)  Although no court in this circuit or
district appears to have applied Rule 9(b) to fraudulent
conveyance claims under the FDCPA, other courts have applied the
particularity requirements to such claims.  <u>See, e.g.</u>, <u>United
States v. Maxwell</u>, 189 F. Supp. 2d 395, 399 (E.D. Va. 2002).
Assuming that the particularity requirement applies to the

---

[5] To the extent that the defendants argue that the warranty
on their vests prevented them from owing a debt to the government
unless and until First Choice refused to repair or replace a
defective vest, this argument raises questions of fact about the
scope of the applicable warranty that cannot be resolved
appropriately before discovery.  <u>See</u> <u>supra</u> I(A).

government's fraudulent conveyance claims, "pleadings on information and belief require an allegation that the necessary information lies within the defendant's control[.]" Kowal, 16 F.3d at 1279 n.3.

Here, the government's complaint contains no such allegation. However, "'[w]hile it is generally understood that the complaint may not be amended by legal memoranda that are submitted as opposition to motions for dismissal . . . courts have allowed, for Rule 9(b) purposes, a party to supplement its complaint through such legal memoranda for the sake of judicial economy.'" United States ex rel. Bender v. N. Am. Telecommc'ns, Inc., 686 F. Supp. 2d 46, 53 (D.D.C. 2010) (alteration in original) (quoting Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 73 (D.D.C. 2002)); see also United States ex rel. Head v. Kane Co., Civil Action No. 05-317 (GK), 2011 WL 3010610, at *13 n.29 (D.D.C. July 25, 2011) (noting that "for Rule 9(b) purposes, courts have allowed plaintiffs to allege lack of access to necessary information in their opposition briefs"). The government asserts in its opposition to the defendants' motion to dismiss that all of the information the government alleged in its complaint on information and belief is "in Defendants' possession[.]" (U.S. Resp. at 23.) Thus, the government's allegations satisfy the particularity requirement with respect to its fraudulent conveyance claims.

II.  SUBJECT-MATTER JURISDICTION

The defendants move under Rule 12(b)(1) to dismiss the breach of contract count for lack of subject-matter jurisdiction, arguing that the Congress Disputes Act ("CDA"), 41 U.S.C. § 601 et seq., establishes a comprehensive administrative scheme for resolving government contract disputes, and that federal district courts lack jurisdiction over breach of contract claims subject to the CDA.  (Def.'s Mot. at 10.)  "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction."  Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18 (D.D.C. 2007); see also Moms Against Mercury v. FDA, 483 F.3d 824, 828 (D.C. Cir. 2007).

Although the "CDA provides the exclusive avenue for relief for all . . . contract claims against the United States[,]" A&S Council Oil Co., Inc. v. Lader, 56 F.3d 234, 236 (D.C. Cir. 1995), "the CDA jurisdictional limits contain an explicit exception for 'any claim involving fraud.'"  United States v. Kellogg Brown & Root Servs., Inc., Civil Action No. 10-530 (RCL), 2011 WL 3303486, at *13 (D.D.C. Aug. 3, 2011) (quoting 41 U.S.C. § 605(a)).  The CDA exception applies to claims "involving fraud" and not merely to claims "of fraud" or "for fraud."  "The use of this broader language reflects a congressional intent to except from CDA exclusivity not only causes of action for fraud in

particular, but also actions the factual bases of which are intertwined with allegations of fraud." United States v. Unified Indus., Inc., 929 F. Supp. 947, 950-51 (E.D. Va. 1996). Since the same factual allegations form the basis for both the government's FCA claims and breach of contract claims, the CDA jurisdictional limit does not bar the government's breach of contract claim. See Kellogg Brown & Root Servs., Inc., 2011 WL 3303486, at *13 (denying motion to dismiss for lack of subject matter jurisdiction the government's breach of claim where FCA claim remained pending). The defendant's motion to dismiss the breach of contract claim therefore will be denied.

## CONCLUSION AND ORDER

The government has sufficiently alleged its FCA and fraudulent conveyance claims, and the CDA does not create a jurisdictional bar to the government's breach of contract claim. Because the government pleads the existence of an express contract with First Choice for direct agency and GSA purchases of bulletproof vests, the government cannot state a claim for payment by mistake or for unjust enrichment against First Choice with respect to these purchases. Accordingly, it is hereby

ORDERED that the defendants' motion [10] to dismiss be, and hereby is, GRANTED with respect to the payment by mistake and unjust enrichment counts as to defendant First Choice for direct agency and GSA purchases, and DENIED in all other respects.

SIGNED this 29th day of August, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge